CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
July 11, 2025
LAURA A. AUSTIN, CLERK
BY: /s/ S. Wray
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DORIS. E. TUCKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 7:24-cv-00733 |
| v. | ) |
| | ) By: Elizabeth K. Dillon |
| CITY OF ROANOKE, VIRGINIA, et al., | )     Chief United States District Judge |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Plaintiff Doris E. Tucker, proceeding *pro se*, filed this action in state court against two defendants—the City of Roanoke ("the City") and U.S. Bank Trust National Association ("the Trust").[1] Her complaint asserts claims related to the mortgage, loan, foreclosure and subsequent eviction from her former home, located at 116 Beech Street, in the city of Roanoke, Virginia ("the Property"). This case is the latest in a string of cases filed by Tucker related to the Property.

There are five motions pending before the court: (1) the Trust's motion for judgment on the pleadings (Dkt. No. 7); (2) plaintiff's motion to voluntarily dismiss without prejudice (Dkt. No. 15), to which both defendants responded, requesting dismissal with prejudice (Dkt. Nos. 16, 17); (3) plaintiff's motion requesting that the court serve defendants (Dkt. No. 22); (4) plaintiff's motion for entry of default judgment against the City (Dkt. No. 23); and (5) the City's demurrer, which was filed prior to removal and which the court construes as a motion to dismiss (Dkt. No.

---

[1] Not in its individual capacity, but solely as owner trustee for RCF 2 Acquisition Trust. U.S. Bank Trust, N.A. was incorrectly identified in the Complaint as U.S. Bank, N.A., which is a separate entity. (*See generally* Notice of Removal, Dkt. No. 1.)

10; *see* State Court Record 31–32, Dkt. No. 9 (demurrer); *id.* at 34–35 (plaintiff's response to demurrer).)

For the reasons set forth herein, the court will deny Tucker's motions requesting that the court serve defendants and for default judgment against the City. The court will grant the City's motion to dismiss and dismiss all claims against it with prejudice. The court also will notify Tucker that it intends to grant her motion to dismiss the Trust but to dismiss the claims with prejudice, and the Trust's motion for judgment on the pleadings will be taken under advisement.

I.  BACKGROUND

A.  **Factual Background**[2]

Many detailed facts are relevant only to the Trust's motion for judgment on the pleadings, and because plaintiff is dismissing all claims against the Trust, it is not necessary to provide extensive background detail as to all of those claims. Nonetheless, the court includes here both facts from Tucker's complaint and attached affidavit and from some of the documents attached to the Trust's motion, none of which are contested by plaintiff. The court takes judicial notice of these documents, most of which are judicial records and land title records.

The general facts as alleged in Tucker's complaint are that she and her husband obtained a home mortgage loan from Beneficial Mortgage Co. of Virginia, which became Beneficial Financial I Inc. as a successor by merger. (When the name change occurred is irrelevant, and the court will refer to either or both as "Beneficial.") That loan was secured by a deed of trust recorded against the property.[3] According to documents provided by the Trust and not disputed

---

[2] It appears that Tucker may have copied and pasted portions of her pleadings from someone else's complaint. The document repeatedly refers to the plaintiff as a "he," and repeatedly identifies the "County of Roanoke," as opposed to the City, as having some involvement in the Property's sale. (*See generally* Compl., Dkt. No. 1-1.) The court ignores mistakes like those to the extent it is obvious, based on context, that they are incorrect.

[3] Tucker's name at the time the mortgage loan was taken was Doris Nance. Although many of the underlying documents refer to her using the name Nance, the court will use Tucker throughout this opinion.

2

by Tucker, that occurred in 2002. Tucker alleges that she made payments toward the mortgage, but that they were not property credited, and that her mortgage mistakenly went into default as a result. (Compl. 4–5, Dkt. No. 1-1.)

As set forth in opinions entered by other courts in other proceedings (and as alleged by Beneficial and others in a state-court case it brought in 2012, *see infra*), it appears that the Tuckers defaulted on the debt in 2008. *See* Mem. Op. at 2, *In re Doris W. Tucker*, Case No. 12-71910 (Bankr. W.D. Va. Aug. 29, 2014), ECF No. 41 (describing the allegations set forth in Beneficial's state-court complaint in *Beneficial Financial I, Inc. v. Doris E. Nance, et al.*, Case No. CL12001900-00 (Roanoke City Circuit Ct.)). Thereafter, a fraudulent check in the amount of $195,000 was given to Beneficial to pay off the mortgage. Beneficial accused the Tuckers of conspiring with two other individuals to commit the fraud, although Tucker testified before the bankruptcy court that she did not conspire with those two individuals, both of whom were subsequently convicted of mortgage fraud. *Id.* at 2, 4. Apparently before Beneficial discovered the check was fraudulent, the note was deemed paid off, the deed of trust was released, and an excess of almost $50,000 was remitted to the Tuckers. *Id.*

Meanwhile, in 2004, 2005, and 2009, a number of documents were placed in the title record of the property. These documents included fraudulent filings by one of the other two individuals, and a number of references to the "Tucker Family trust." (*Id.* at 2–3.) The final document was recorded in 2009—a common law lien executed by Tucker which "purported, among other things, to assert a $150,000 lien against the Property in reliance upon the Magna Carta and Declaration of Independence, among other authorities." (*Id.* at 3.)

Upon discovery of the fraud, Beneficial took action to restore the status quo ante, including its rights as beneficiary of the deed of trust. Beneficial executed and recorded multiple

3

documents of rescission to rescind the releases of its deed of trust, and it also demanded payments due from the Tuckers, but it received none. In 2012, Beneficial filed a declaratory judgment action in the circuit court of Roanoke City (the 2012 Case) to seek a determination of the priority of its title.

Shortly thereafter, Tucker filed for Chapter 7 bankruptcy. In her complaint before this court, she explains that she filed for bankruptcy "to stop a pending foreclosure." (Compl. 5.) The docket in the 2012 Case reflects that a suggestion of Tucker's bankruptcy was filed in the case in 2013. And the bankruptcy court records show she received a discharge on February 12, 2013.

Tucker states that she appeared for a hearing in the 2012 Case before Roanoke City Circuit Court Judge David Carson in October 2016. She complains that Judge Carson "ignored her argument" and "threatened her with contempt of Court if she opened her mouth." (Compl. at 5.) She claims that his refusal to set aside her judgment of foreclosure led "directly to the foreclosure" of the Property. (*Id.*) She also contends that he had a meeting in chambers with opposing counsel, which she was not "invited" to attend. (*Id.*)

On November 4, 2016, the court in the 2012 Case entered an order granting relief in favor of Beneficial and the trustees. (Trust Mem. Ex. D, Dkt. No. 7-5.) In short, the order voided and struck from the title record of the Property those documents recorded in 2004, 2005, and 2009 by Tucker or by others on her behalf. And it restored Beneficial's priority title, stating that Beneficial's "loan was not paid by receipt of the fraudulent check, that the loan remains due and owing, and that the Deed of Trust remains attached to the Property, with a priority date of September 25, 2002." (Trust Mem. Ex. D, Order, ¶ 5.) The same order recognized that Tucker

4

had filed for bankruptcy and received a bankruptcy discharge. Thus, Beneficial's claims for any personal liability as to both her and her husband were dismissed at its request. (*Id.* ¶ 6.)

In challenging Judge Carson's ruling, Tucker asserts that, because Beneficial received and discovered the allegedly fraudulent check in 2008, the statute of limitations had run before it filed its lawsuit and thus that its claim should not have been allowed at all. She also contends that Judge Carson erred in ignoring the federal bankruptcy court's order and that Beneficial should not have been permitted to sell or assign the Deed of Trust after violating the bankruptcy federal law by violating the discharge provision.[4] (*See generally* Tucker Aff., Dkt. No. 1-1, at 33–36.)

After entry of the declaratory judgment in the 2012 Case, the deed of trust was assigned to several other companies. (Trust Mem. 7–8 & Exs. E, F, G, H, I, and J.) Tucker alleges that her loan was sold to "U.S. Bank, N.A. as trustee for RCF-2 Acquisition Trust." As noted, though, U.S. Bank is unrelated to this case and was improperly named; the proper defendant is

---

[4] Tucker provides a copy of the order (Dkt. No. 1-1, at 27), and she implies that the bankruptcy court found that Beneficial violated the discharge provision by continuing with the 2012 Case after her 2013 discharge. This is incorrect.

It is true that in the 2015 order, the bankruptcy court specifically found that "Beneficial violated the discharge injunction of 11 U.S.C. § 524, but that an award of damages is not appropriate under the facts of this case." *In re Doris W. Tucker*, Case No. 12-71910 (Bankr. W.D. Va. Feb. 27, 2015) (order denying motion for sanctions for violation of the automatic stay). From this, Tucker argues that the violation calls into question Judge Carson's 2016 ruling, contending that Judge Carson "ignored" that bankruptcy ruling and should not have granted relief to Beneficial because of its violation of the discharge injunction. However, the bankruptcy court's related opinion, of which the court takes judicial notice, reflects that the violation was premised on a mortgage statement sent in 2014 and that it was unrelated to Beneficial's pursuit of remedies in the 2012 Case. *Id.*, Case No. 12-71910 (Bankr. W.D. Va. Feb. 27, 2015) (memorandum opinion).

In fact, in an earlier opinion and order, the bankruptcy judge expressly found that Beneficial's continuing the 2012 state-court lawsuit against Tucker after her bankruptcy discharge was wholly proper and did not warrant sanctions against Beneficial. *In re Doris W. Tucker*, Case No. 12-71910 (Bankr. W.D. Va. Aug. 29, 2014) (order denying motion for sanctions). In doing so, it explained that the lawsuit was not improper insofar as it sought only *in rem* relief, as opposed to seeking personal liability. (*Id.* at 7–8.)

Thus, to the extent that Tucker's claims of error are premised on the state court proceeding—or its result—being an alleged violation of the bankruptcy discharge, that issue was decided against her by the bankruptcy court. Contrary to Tucker's suggestion, then, the violation found by the bankruptcy judge does not call into question the propriety of Beneficial's pursuit of the 2012 Case or Judge Carson's ruling in Beneficial's favor.

the Trust. The Trust was assigned all interests under the original deed of trust on May 7, 2021. (Trust Mem., Ex. J.)

On January 24, 2023, the Commonwealth conducted a foreclosure sale of the Property; the Trust was the high bidder and purchaser in the amount of $170,000. The sale was evidenced by the substitute trustee's deed. (*Id.*, Ex. K.)

On April 13, 2023, the Trust filed an unlawful detainer action against Tucker in the General District Court for the City of Roanoke seeking possession of the Property. (*Id.*, Ex. L (docket sheet in general district court case).) Following a trial on the merits, on July 10, 2023, the court entered judgment for possession in favor of the Trust. Tucker appealed to the Circuit Court for the City of Roanoke. (*Id.*, Ex. M (docket sheet in circuit court case).) On December 5, 2023, the circuit court entered a final order awarding the Trust possession and a writ of eviction issued thereafter, on January 23, 2024. (*Id.*) No further appeal was taken from that judgment.

Tucker identifies a number of ways in which she contends that the Trust violated various constitutional, statutory, and common-law rights, and she alleges fraud, as well. The court need not discuss these in any detail, as she is dismissing all claims against the Trust.

Tucker further alleges that the procedures used to notify her that "the County intended to foreclose" also violated both her due process rights (Compl. 8–9), and she claims violations of the Fair Debt Collections and Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*. She also claims that her subsequent eviction was improper. As noted, though, the propriety of the foreclosure and eviction were decided against her in the 2023 and 2024 state-court proceedings.

6

**B. Tucker's Claims**

Tucker's complaint lists six separate causes of action, although some of them appear to conflate multiple types of claims into a single "cause of action." It appears that all claims are brought against both parties. She titles them as follows:

1. Reasonable reliance, detrimental reliance, violation of due process, violation of Federal Rule 60(b);
2. Negligent Deprivation of Civil Rights Under 42 U.S.C. § 1983, which appears to be an allegation that her procedural due process rights were denied;[5]
3. Joint Action/Conspiracy to Violate Civil Rights Under 42 U.S.C. § 1983;
4. Joint Action/Conspiracy to Violate Rights Under 18 U.S.C. §§ 241, 242;
5. Joint Action/Conspiracy to Violate Rights Under Civil Code 52.1;[6] and
6. Violation of Fair Debt Collection and Practices Act ("FDCPA"), 15 U.S.C. § 1692.

For relief, Tucker seeks a declaration that defendants "lack any interest in the Property" that would permit them to take any action with regard to the Property, that she be permitted to purchase the Property "through either an affordable loan or through a modification," and she also seeks compensatory, statutory double, and punitive damages. (Compl. 18–19.)

**C. Procedural History**

The case was removed to this court, and the Trust filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). After initially seeking an extension of time to respond, Tucker filed a voluntary "motion to dismiss without prejudice." (Dkt. No.

---

[5] Tucker clearly states that she is not asserting any substantive due process violations. (Compl. 8.)

[6] Again, this section seems to be copied and pasted from a separate complaint. This count refers to "California Civil Code 52.1" and the Tom Bane Civil Rights Act, a California statute. Although she asserts that "Virginia has a similar statute," Tucker does not identify that statute with any specificity.

15.) The court issued an order on December 6, 2024, directing Tucker to file a notice informing the court whether she sought dismissal of the entire case and also giving defendants an opportunity to respond to her motion to dismiss. Both defendants responded, requesting a dismissal *with* prejudice. Tucker failed to file any response at all. Thereafter, the court issued an order to show cause directing Tucker to show cause why she failed to respond to the court's December 6 order and directing her to inform the court "whether she seeks to voluntarily dismiss without prejudice the entire lawsuit or whether she seeks to dismiss only the City of Roanoke." (Show Cause Order 2, Dkt. No. 20.) The court's order warned Tucker as follows:

> **If Tucker fails to respond to this order in a clear and timely fashion, the court will assume she has lost interest in the case and may treat her nonresponse as a failure to prosecute the case as to all defendants. If that occurs, the case may be dismissed <u>with prejudice.</u>**

(*Id.* (emphasis in original).)

Tucker filed a timely response to that order, but it was not at all clear. The document begins by stating that she filed her motion to dismiss without prejudice "primarily to dismiss U.S. Bank, as trustee for the securitized trust." (Resp. to Show Cause Order 1, Dkt. No. 21.) Her response then goes on to contain what looks like another pleading, containing various "causes of action" against "defendants" and citing to Black's Law Dictionary as well as cases discussing fraud and substantive and procedural due process. Moreover, although the attachment is not entirely clear, it repeatedly references the Trust in the allegations and appears to be asserting claims against the Trust. Thus, it remained unclear to the court which claims against which defendant or defendants, if any, Tucker sought to dismiss. More recently, however, and in response to a *Roseboro* notice issued by this court as to both the Trust's motion for judgment on

the pleadings and the City's motion to dismiss, Tucker made clear that she wants to dismiss all claims against the Trust. (Dkt. No. 26.)

Before her latest filing—and based on this lack of clarity and given the court's clear warning to Tucker that a failure to provide a clear response could be construed as a failure to prosecute—the City requests that the court dismiss her case with prejudice. (*See generally* Dkt. No. 24.) The court declines to base dismissal on the basis that Tucker failed to comply with the court's orders. *See Mutual Fed. Sav. & Loan Ass'n v. Richards & Assoc.*, 872 F.2d 88, 92 (4th Cir. 1989) (explaining that dismissal as a sanction for a party's failure to follow a court order is a severe sanction and emphasizing that the court must consider alternative sanctions that might be effective in deterring future disrespect and in preventing prejudice to the defendants).

Here, Tucker responded to the court's show cause order (albeit without the clarity ordered by the court), and she has since filed additional documents with the court, including a motion for default judgment against the City. Additionally, she has now filed a response making clear that she seeks to dismiss all claims against the Trust. (Dkt. No. 26.) Thus, while Tucker did not timely respond to the court's first order and while her response to the show cause order was not particularly clear, the court declines to dismiss her case on the grounds that she has failed to prosecute it.

III.  DISCUSSION

**A. The City Has Appeared and Has Not Challenged Service, and It Is Not in Default.**

Tucker asks that the court serve the City, and she also moves for default judgment against the City. (Dkt. Nos. 22, 23.) The City has filed a response in opposition to the motion for default judgment. (Dkt. No. 24.) Both motions will be denied. As to the first, the City has received notice of this lawsuit, it has actively participated both in the state court and before this

9

court, and it has not challenged service of process. Thus, there is no need to serve the City. That motion (Dkt. No. 22) will be denied.

Additionally, as the court's prior orders suggested, the City is not in default and a default judgment against it is not appropriate. The City timely responded in state court by filing a demurrer, and it was not required also to file an answer while its demurrer remained pending, either in state court or this court. *See* Fed. R. Civ. P. 12(a)(4) (directing that where a party files a pre-answer motion, the answer is not due until fourteen days after notice of the court's denial of the motion); *Myrick v. United States*, 559 F. App'x 245, 246 (4th Cir. 2014) ("[T]imely filing of a motion to dismiss suspend[s] [the party's] obligation to file an answer."). Thus, Tucker's motion for default judgment (Dkt. No. 23) will be denied.

**B.  City's Motion to Dismiss**

As noted in the court's June 26, 2025 Notice to Plaintiff and Order, the court is treating the City's demurrer, which asks for dismissal of Tucker's claims based on a failure to state a claim, as a motion under Rule 12(b)(6). (Dkt. No. 25, at 1 & n.1.) The City's motion first notes that Tucker's complaint misidentifies it as a "for profit business" corporation when it is in fact a Virginia municipality established by Charter enacted by the General Assembly. (Demurrer ¶¶ 1–2, Dkt. No. 9, at 31.) The City seeks dismissal of the complaint on the ground that Tucker fails to assert any facts or allege any activity taken by the City upon which she could establish a cause of action. (*Id.* ¶¶ 3–4.) And it explains that "[i]t appears that [Tucker's] sole reason for naming the City as a party to this action is because the property in question is located in the City of Roanoke." (*Id.* ¶ 4 (citing Compl. ¶ 7).)

Having reviewed the entirety of the complaint, the court agrees with the City's analysis. Tucker names the City in the style of the complaint and notes that the Property is located there,

10

but she does not allege any actions by the City or anyone acting on its behalf that could give rise to liability.

Tucker filed an initial response to the demurrer (Dkt. No. 9, at 35–36), and she also filed one additional document that is titled as a response to the City's demurrer. (*See* Dkt. No. 19.) The court issued a *Roseboro* notice on June 26, 2025, giving her an additional opportunity to respond to both the City's demurrer and the Trust's dispositive motion. She filed a response, but that response does not address the substance of the City's motion.

In her second response (Dkt. No. 19), Tucker clarifies her allegations against the City. Specifically, she alleges that Judge Carson is an employee of the City and suggests that the city should be held vicariously liable based on his actions during the 2012 Case.[7] (Dkt. No. 19, at 2.) This theory of liability rests on an incorrect premise. Significantly, circuit court judges are not employees of the cities in which their court is located. Instead, they are constitutional officers. *Chien v. Virginia*, No. 1:17-CV-677, 2018 WL 1157548, at *7 (E.D. Va. Mar. 3, 2018) (stating that county circuit court judges are constitutional officers and that such officers are not employees of the county where they sit and are not subject to the authority of the local government); *Foster v. Jones*, 79 Va. 642, 645 (1884) (holding that county judges are constitutional officers). *Cf. Crawford v. Hughes*, No. 3:20cv813, 2021 WL 2125031, at *7 (E.D. Va. May 25, 2021) (holding that Eleventh Amendment immunity, which applies to *state* officers acting in their official capacities, applied to a Virginia Circuit Court judge who presided over eviction proceedings).

---

[7] Tucker's response also flatly states, without any supporting facts, that the City "has aided and abetted and allowed a pattern of racial discrimination against Plaintiff's civil rights and due process." (Dkt. No. 19 at 2.) Tucker's complains asserts due process violations, but it does not allege a pattern of racial discrimination, nor does it provide any facts to support such an assertion.

11

Tucker cites to no authority that would allow the court to impose liability on a municipality as a result of a state constitutional officer's actions. Indeed, the Supreme Court of Virginia has refuted any such suggestion. *Roop v. Whitt*, 768 S.E.2d 692, 695–96 (Va. 2015) (explaining that constitutional officers "exist independent from the local government," "are neither agent of nor subordinate to local government," and "are not local employees"; "[t]he local government has no control over their work performance" and cannot hire or fire them). Thus, the City cannot be held responsible for Judge Carson's actions. And Tucker does not identify any other conduct by the City that would state a claim against it. *Cf. Owens v. Baltimore City State's Att'ys Office*, 767 F.3d 379, 402 (4th Cir. 2014) (explaining that a municipality has *Monell* liability under § 1983 only where "it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights," and emphasizing that it can be held liable only for its *own* illegal acts, not "'*solely* because it employs a tortfeasor'") (quoting *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658 (1978)). Tucker does not allege any facts setting forth a custom, policy, or practice that resulted in the violation of her constitutional rights. Her claims against the City will be dismissed.[8]

---

[8] The court further notes that, even if Tucker had named Judge Carson directly as an individual defendant, the claims against him would fail because he is entitled to judicial immunity. Judicial immunity clothes judges with absolute immunity from liability in damages for their judicial or adjudicatory acts. *Forrester v. White*, 484 U.S. 219, 225–26 (1988). Judicial immunity is an absolute defense, not merely to liability or damages, but a defense to suit. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). There are two possible exceptions to judicial immunity—where a judge is engaged in (1) non-judicial acts; or (2) acts taken in the clear absence of all jurisdiction. *Mireles*, 502 U.S. at 11–12. But neither exception applies here. The actions that Tucker challenges are judicial decisions by Judge Carson in the context of court proceedings before him. They thus were judicial acts because they were "function[s] normally performed by a judge," and Tucker "dealt with the judge in his judicial capacity." *Mireles*, 502 U.S. at 12 (citing *Stump v. Sparkman*, 435 U.S. 349, 360 (1978), as identifying these two factors used to determine whether an act is a judicial one). Tucker does not allege that Judge Carson lacked jurisdiction to rule, either, so the second exception does not apply. Accordingly, even if she were seeking to hold Judge Carson individually liable, the claims against him would fail.

**C. Plaintiff's Motion to Voluntarily Dismiss**

Tucker has now made clear that she is asking to dismiss her claims against the Trust. (Dkt. No. 26.) As applicable here, Federal Rule of Civil Procedure 41 allows Tucker to dismiss this case "only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).[9] "Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." *Id.* Here, the Trust has specifically requested that the court dismiss the claims against it with prejudice if it grants Tucker's motion. (Dkt. No. 17.)

The purpose of the Rule 41(a)(2) is "freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." *Dean v. WLR Foods, Inc.*, 204 F.R.D. 75, 77 (W.D. Va. 2001) (quoting *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987)). Therefore, a denial of a motion for voluntary dismissal—or a decision to dismiss with prejudice—must be accompanied by a finding of unfair, or "substantial prejudice" to the defendant. *Id.* (citing *Andes v. Versant Corp.*, 788 F.2d 1033, 1036 (4th Cir. 1986)); *Choice Hotels Int'l, Inc. v. Goodwin & Boone,* 11 F.3d 469, 471 (4th Cir. 1993) (noting that a court's authority to dismiss *with* prejudice is implied in the language of the rule).

The primary focus of the prejudice inquiry is the interests of the defendant. *Dean*, 204 F.R.D. at 77. Some degree of prejudice from a dismissal without prejudice is almost inherent; the proper inquiry is whether the prejudice is *substantial*. *See id.* (citing *Andes*, 788 F.2d at 1036). There appears to be no bright line test to determine what rises to the level of substantial prejudice in the voluntary dismissal context, and the inquiry hinges to some extent on the particulars of each case. *Id.*

---

[9] The Trust already has filed an Answer (Dkt. No. 6), so voluntary dismissal without a court order is not available under Rule 41(a)(1).

13

"Factors that may bear on whether the defendant will suffer legal prejudice by a dismissal include, among others, (1) the plaintiff's diligence in moving for a voluntary dismissal, (2) the stage of the litigation, including the defendant's effort and expense in preparing for trial, and (3) the adequacy of the plaintiff's explanation for the need to dismiss." *Fidelity Bank PLC v. N. Fox Shipping N.V.*, No. 06-1299, 2007 WL 2046805, at *3 (4th Cir. 2007). These are not exclusive, and other factors may also play a role.

Here, at least two of those factors and others weigh heavily in favor of a dismissal with prejudice. The stage of litigation tilts slightly in Tucker's favor, as the case is still at its beginning stages and the Trust has not yet had to prepare for trial or engage in discovery. The other two factors show clear prejudice to the Trust from a dismissal without prejudice. First, Tucker moved for dismissal only *after* the Trust had filed a lengthy and detailed motion for judgment on the pleadings. She also sought—and received—an extension of time to respond to that motion, but then elected to file her motion to dismiss on the last day of the extended period to respond. As for the third factor listed in *Fidelity Bank*, Tucker has given no explanation or reason for the dismissal. For its part, the Trust has expended significant effort to defend the lawsuit and has filed a number of documents with the court, including a notice of removal, an answer, and its motion for judgment, which contains extensive briefing and authority addressing all of Tucker's claims.

Of importance here, the court also notes that this is at least the fifth lawsuit in a series of lawsuits Tucker has brought in this court (or, in this case, brought in state court and removed), involving the Property, Tucker's loan, note, and/or deed of trust, and the same parties (or their privies). Tucker has often been granted leave to proceed *in forma pauperis*, and, in those cases, she has not expended money directly to file those lawsuits. Those cases and the resolution of

14

them are set forth accurately in the chart provided by the Trust in its opposition to dismissal without prejudice. (Dkt. No. 17, at 3–5.) One of those was dismissed because of plaintiff's failure to prosecute, several were dismissed for lack of subject-matter jurisdiction, and in her most recent case before this one ("the fourth case"), the court granted Tucker's motion to voluntarily dismiss without prejudice. (*See id.*)

Notably, the fourth case followed a similar pattern to this one. There, the City had filed a Rule 12(b)(6) motion. Tucker then sought—and received—an extension of time to respond, representing that she needed more time for "necessary research." The day before the expiration of her extended deadline, and instead of filing a response to the City's motion, Tucker filed a motion to voluntarily dismiss, which the court granted, dismissing the case without prejudice. (Dkt. Nos. 17-4, 17-5.)

To summarize then, Tucker continues to file lawsuits, often against the same parties, and concerning the same subject-matter. Then, after the defendants have put forth substantial effort in filing dispositive motions (and in this case, a notice of removal, Answer, and other filings), she asks to voluntarily dismiss, essentially using Rule 41(a) to avoid a potentially adverse decision. Indeed, the court had already begun to analyze the motion for judgment on the pleadings here, and some—if not all—of the claims against the Trust are subject to dismissal on the grounds argued in its motion.

By way of example only, Tucker's second and third claims, both of which assert claims under 42 U.S.C. § 1983, fail to state a claim against the Trust. To state a claim under that provision, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017) (internal

quotation marks omitted). There are no factual allegations in the complaint to support any conclusion that the Trust acted under color of state law. Thus, any § 1983 claims against the Trust necessarily fail.

Similarly, Tucker's fourth claim asserts violations of federal criminal statutes—18 U.S.C. §§ 241 and 242. Those claims cannot be brought by a private litigant and they do not provide a civil cause of action. *Rosser v. Carson*, No. 7:19CV00156, 2019 WL 1474009, at *2 (W.D. Va. Apr. 3, 2019) (explaining that 18 U.S.C. § 241 and 242 "do not provide for a private cause of action" and "[o]nly the United States as a prosecutor can bring a complaint" under those provisions) (citations omitted); *Suiter v. Taylor*, No. 5:23cv00062, 2024 WL 3466186, at *23 n.5 (W.D. Va. July 19, 2024). Indeed, this claim is not only subject to dismissal, but also frivolous, as it has no legal basis.

Additionally, her claims repeatedly challenge state-court proceedings that have already concluded and seem to suggest—for example, by a reference to Federal Rule of Civil Procedure 60(b)—that this court should review and vacate portions of the judgments in those state cases, but the *Rooker-Feldman* doctrine prohibits this court from doing so.[10]  *See Reed v. Goertz*, 598 U.S. 230, 235 (2023) (explaining that *Rooker-Feldman* "prohibits federal courts from adjudicating cases brought by state-court losing parties challenging state court judgments" and setting forth exceptions, none of which are applicable here). Indeed, *Rooker-Feldman* would bar this court from reconsidering or otherwise invaliding Judge Carson's 2016 judgment, as well as the general district court and circuit court judgments that resulted in the eviction orders, all of which were concluded before Tucker filed this lawsuit in July 2024. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (explaining that federal district courts cannot

---

[10] The doctrine is based on *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"). Thus, those requests for relief also will fail.

In sum, it would cause substantial prejudice to the Trust if the court were to dismiss without prejudice, especially given that (1) many, if not all, of Tucker's claims against the Trust lack merit and are subject to dismissal anyway; and (2) Tucker has repeatedly sued the same parties, asserting similar claims, and has failed to respond to dispositive motions, instead using Rule 41(a) to avoid potentially adverse rulings. A dismissal without prejudice would give Tucker yet another opportunity to file the same claims against the Trust in some future lawsuit, resulting in further prejudice to the Trust from having to defend the same or similar claims yet another time. For these reasons, the court intends to grant Tucker's motion but to dismiss her claims against the Trust with prejudice.

The Fourth Circuit has directed that, before dismissing with prejudice when a plaintiff has sought a voluntary dismissal without prejudice, a court must give notice to the plaintiff. The notice should include (1) advance notice of its inclination toward such dismissal, (2) the opportunity to respond to defense counsel's request for that result, and (3) the option of allowing its case to proceed to judgment on the merits. *Grades v. Gregory,* 37 F.3d 1493, 1493 (4th Cir. 1994) (unpublished) (*per curiam*). *See also Andes,* 788 F.2d at 1037 ("It upsets notions of fundamental fairness for a court, in response to a party's request for dismissal without prejudice, to grant the request by dismissing *with* prejudice, while failing to give the moving party notice of its inclination to impose this extreme remedy. [A] plaintiff deserve[s] such notice and an opportunity to proceed with the litigation of this case."); *Jones v. Hill,* 73 F.3d 357, 357 (4th Cir.

17

1995) (unpublished) (*per curiam*) ("'[T]he plaintiff is entitled to notice of the district court's intention to dismiss with prejudice so that he may consider the options available to him.'").

To comply with this notice requirement, the court's order will give Tucker notice of its intent to dismiss with prejudice all claims against the Trust at this time. The court will also give Tucker fourteen (14) days to either: (1) file any response in opposition to the Trust's request for dismissal with prejudice (Dkt. No. 17); or (2) notify the court that she wants to allow the case against the Trust to proceed. If she chooses to allow the case to proceed, then she also must file her response to the Trust's motion for judgment on the pleadings within the same fourteen-day window. If Tucker fails to timely respond, the court will dismiss all claims against the Trust with prejudice for the reasons set forth herein.

### III.  CONCLUSION

For the foregoing reasons, the court will dismiss with prejudice all claims against the City, and it will deny plaintiff's motions to serve and for default judgment. The court further gives notice of its intent to grant plaintiff's motion for voluntary dismissal of claims against the Trust, but to dismiss all of those claims with prejudice. It will give plaintiff an opportunity to determine how she would like to proceed in response to that notice, and the particulars of that opportunity will be set forth in the court's order. In the meantime, the Trust's motion for judgment on the pleadings will be taken under advisement.

An appropriate order will be entered.

Entered: July 11, 2025.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge